**Jerry M. MYERS, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–629.**

United States Court of Veterans Appeals.

Submitted Sept. 16, 1991.

Decided Nov. 5, 1991.

Thomas E. Kalmbach, St. Louis, Mo., was on the brief, for appellant.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Craig M. Kabatchnick, Washington, D.C., were on the pleadings, for appellee.

Before FARLEY, Associate Judge.

## MEMORANDUM DECISION

FARLEY, Associate Judge:

Appellant, Jerry M. Myers, appeals from the March 13, 1990, Board of Veterans' Appeals (Board or BVA) decision which affirmed the denial by the Department of Veterans Affairs (VA) Regional Office (RO) of service connection for arthritis and residuals of frostbite. Appellant also seeks service connection for irritable bowel syndrome. Following the filing of appellant's brief, the Secretary moved for summary affirmance, for acceptance of the motion in lieu of a brief, and for a stay of proceedings. The Secretary argues that the Board did not commit error when it denied service connection for arthritis and residuals of frostbite. The Secretary also notes that appellant specifically withdrew the issue of service connection for irritable bowel syndrome from the Board (R. at 152) and that, due to this withdrawal, the Board's decision was "limited to the issues of entitlement to service connection for arthritis and residuals of frostbite." R. at 159. Since this Court's jurisdiction is confined by 38 U.S.C. § 7252 (formerly § 4052) to the review of BVA decisions, the Secretary correctly notes that the issue of irritable bowel syndrome is not properly before the Court. Appellant did not respond to the Secretary's motion.

## I. BACKGROUND

Appellant served on active duty from January 2, 1943, to September 27, 1945. R. at 27. He was shot down on August 16, 1944, while flying his twenty-seventh combat mission with a heavy bomber squadron over Germany. R. at 134, 148. Appellant has no recollection of parachuting from his plane or of landing, and has little or no memory of events between August 16, 1944, and mid-October, 1944, when he found himself aboard a train in a boxcar with other POWs, en route to "Stalag Luffte # 4," in eastern Germany. R. at 134. Appellant was interned in the POW camp until early February, 1945, when his captors ordered him to begin what was to become an eighty-six day, seven hundred mile forced march. Appellant believes that at one point he had walked as far west as the French border. R. at 85. Appellant was liberated on May 2, 1945, and was discharged in September, 1945. R. at 148.

The following facts are pertinent to this appeal. In 1945, appellant filed a VA claim for a number of service-connected disorders. R. at 28. His primary complaints were nervous anxiety and bowel irritation. Reports of VA examinations conducted in 1945, 1946, 1947, 1949 and 1950 contain references to headaches, anxiety and diges-

tive problems. A report in 1946 states that "[h]is appetite is worsening, he is sleeping poorly, with headaches which are frontal in nature, and which are with him for the first time in his life. His vomiting spells still persist." R. at 41.

On August 9, 1988, appellant was examined at a VA arthritis clinic, where he complained of pain in both shoulders. R. at 126. Again, he gave a history of daily headache pain since leaving the service and claimed that x-rays, taken six months earlier, showed degenerative joint disease. *Id.* While x-rays taken August 9, 1988, were negative as to the shoulders, x-rays of the neck showed osteophyte posterior bodies of C3 and C5 vertebrae, which were attributed to degenerative changes, and narrowing between C5 and C6 vertebrae of the cervical spine. *Id.*

On a VA Form 10–0048, "Former POW Medical History," dated June 29, 1988, (R. at 101–04) the veteran wrote, "I have never been able to remember the details of my capture. I have always believed that I was injured either in leaving the plane, when I hit the ground, or by my captors." R. at 104. A former prisoner-of-war protocol examination, conducted on November 15, 1988, resulted in a diagnosis which included cold exposure, frostbite with residuals, and a history of probable head injury and possible neck injury, with degenerative joint disease of the neck. R. at 100; Br. of appellee at 5. On December 9, 1988, the RO rendered a rating decision that denied service connection for degenerative arthritis of the cervical spine, residuals of frostbite and bowel disorders. R. at 128–31. The rating board stated that "the veteran's present arthritis of the cervical spine is not related to any traumatic event that the veteran might have had during his POW confinement." R. at 129. It also stated that "the exam [of November 15] was entirely unremarkable for any residuals of frostbite." *Id.* The veteran filed a Notice of Disagreement, which was received on January 12, 1989, with respect to the denials of service connection for irritable bowel syndrome, residuals of frostbite and degenerative arthritis. R. at 133–34.

A VA examination on March 27, 1989, resulted in a diagnosis of "1. History of fall injury with cerebral concussion and cervical injury, possible post-traumatic arthritis [of the] cervical spine, post-traumatic arthritis [of the] lumbar spine. 2. History of frostbite of ears, hands, and feet, with no gross residuals to rule out degenerative arthritis. 3. History of irritable bowel syndrome." R. at 138. In addition, a VA radiology examination resulted in the conclusion that "[t]here is [sic] extensive degenerative changes in the cervical spine," yet there was "no evidence of any acute fracture or subluxation." R. at 139. On May 29, 1989, the VA denied appellant service connection for arthritis, frostbite and irritable bowel syndrome. R. at 144–146.

On a VA Form 1–9, "Appeal to Board of Veterans Appeals," dated July 25, 1989, the veteran stated: "Although I have had the bowel problems for a long time and still have them, I will accept the findings and consider them related to stress and make no claim at this time." R. at 152. In its decision of March 13, 1990, the BVA took note of this withdrawal and limited its consideration to the claims for service connection for arthritis and residuals of frostbite. R. at 159. The Board concluded that appellant's "[a]rthritis was not present during service, has not been shown to have been manifested to a compensable degree within one year after separation from service, and has not been shown to have been the result of trauma." *Jerry M. Myers*, BVA 90–1144 at 6 (Mar. 13, 1990). The Board also held: "[r]esiduals of frostbite were not present during service and have not been demonstrated at any time following separation from service." *Id.* A timely appeal to this Court was filed on July 12, 1990.

## II. THE DENIAL OF SERVICE CONNECTION FOR TRAUMATIC ARTHRITIS

With respect to appellant's claim for service connection for arthritis, the issue is not whether appellant presently suffers from cervical arthritis; that fact is beyond dispute. R. at 139. Nor is the issue

whether the veteran had arthritis during service; it is agreed that there was neither a complaint nor a diagnosis of arthritis during military service and there is no indication of arthritis in the reports of the VA examinations conducted from 1946 through 1950. R. at 41–83. The issue raised on this appeal is whether the BVA was correct when it concluded that "the arthritis of the veteran's cervical spine is of a degenerative nature.... Without medical evidence to show arthritis of traumatic origin there is no basis upon which to presume that the arthritis of the veteran's cervical spine was incurred during service." *Jerry M. Myers,* BVA 90–1144 at 6 (Mar. 13, 1990).

While it is difficult to distinguish between degenerative arthritis and posttraumatic arthritis, the distinction is an important one. If the veteran's arthritis is found to have been traumatic in origin, then he is entitled to the benefit of a statutory presumption that it is service-connected. Pursuant to 38 U.S.C. § 1112(b)(12) (formerly § 312(b)(12)) it is presumed that "in the case of a veteran who is a former prisoner of war and who was detained or interned for not less than thirty days, the disease of ... post-traumatic osteoarthritis ... which became manifest to a degree of 10 percent or more after active military, navel, or air service shall be considered to have been incurred in or aggravated by such service, notwithstanding that there is no record of such disease during the period of service." It is important to note that, unlike 38 U.S.C. § 1112(a) and (c), section 1112(b), which creates presumptions for veterans who are former POWs, contains no time limit on the presumptions. If the disease or condition is "manifest to a degree of 10 percent or more" it is presumed to be service-connected. Only affirmative evidence establishing intercurrent injury or disease or willful misconduct by the veteran will rebut the presumption of service connection. *See* 38 U.S.C. § 1113 (formerly § 313). Moreover, there is no requirement that the trauma which caused the arthritis has to have occurred during military service. *See Bailey v. Derwinski,* 1 Vet.App. 441 (1991).

The facts in *Bailey* are very similar to those which gave rise to this appeal. In *Bailey,* at 442, the veteran was forced to parachute from a bomber over Germany, was captured and held as a POW, was subjected to bitter cold and endured a forced march beginning in February 1945. Also like here, the record in *Bailey* contained no medical reports from the period of the veteran's captivity. This case is complicated by the fact that the appellant is unable to serve as a witness on his own behalf due to the amnesia. He contends that being discovered on the ground unconscious in Germany, experiencing amnesia for two months and receiving a purple heart provide adequate evidence that he suffered a severe head or neck injury. He believes that this trauma, allegedly sustained in-service, is the cause of his present cervical arthritis. Appellant also claims that his headache pain, which has persisted daily since the war, is further evidence of a head or neck injury. The BVA decision does not deal with any of these contentions; it merely makes the finding that "[a]rthritis ... has not been shown to have been the result of trauma." R. at 163. While the Secretary argues that appellant's arthritis is due to aging, the Board neither makes such a finding nor offers the requisite support for this medical conclusion. *See Murphy v. Derwinski,* 1 Vet.App. 78 (1990).

Each BVA decision must be accompanied by "a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions." 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)); *see Gilbert v. Derwinski,* 1 Vet.App. 49 (1990). A statement of reasons or bases is even more crucial where, as here and in *Bailey,* the Board lacked contemporaneous records and had to make a difficult decision involving medical causation. Indeed, in 1986, when the Senate Committee on Veterans' Affairs proposed the presumption of service connection for traumatic arthritis visited upon former POWs, it took special note of the "disagreement as to the adequacy of current medical science to distinguish between arthritis resulting from earlier trauma and

arthritis which is the result of other causes or which normally occurs during the aging process." S.Rep. No. 444, 99th Cong., 2d.Sess. 30, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5469, 5480. We hold that the bare conclusory statement to the effect that the veteran's arthritis did not result from trauma is insufficient to satisfy the requirement of § 7104(d)(1). A remand is necessary to provide the Board with an opportunity to review the findings and conclusions and to include a statement of "the reasons or bases for those findings and conclusions." 38 U.S.C. § 7104(d)(1).

Similarly, the Board's decision of March 13, 1990, does not include a statement of the reasons or bases for the apparent conclusion that this veteran was not entitled to the benefit of the doubt under 38 U.S.C. § 5107(b) (formerly 3007(b)). The word "apparent" is used advisedly because, other than a brief reference to "reasonable doubt" in the recitation of the governing law and regulations (R. at 162), the decision does not include a discussion, finding or conclusion with respect to the benefit of the doubt rule. Remand will give the Board the additional opportunity to consider the benefit of the doubt doctrine and to include the requisite statement of the reasons or bases for its conclusion on that issue as required by 38 U.S.C. § 7104(d)(1).

### III. THE DENIAL OF SERVICE CONNECTION FOR RESIDUALS OF FROSTBITE

Appellant contends that he suffered frostbite during the forced march he endured during the winter of 1945. He describes terrible conditions: POWs having to sleep on the ground outdoors; nighttime temperatures falling well below zero; and, on one occasion, appellant's clothes freezing to the ground. R. at 85. Under 38 U.S.C. § 1112(b)(11) (formerly § 312(b)), any existing "organic residuals of frostbite, if the Administrator determines that the veteran was interned in climactic conditions consistent with the occurrence of frostbite" are presumed to be service-connected in the case of a former POW. In view of this statutory presumption, there can be no dispute that the appellant would be entitled to service connection for any residuals from frostbite. The issue, however, is not whether the appellant suffered frostbite but whether he presently suffers from any such residuals. In its decision of March 13, 1990, the BVA determined as a factual matter that there are no such residuals.

This Court can reverse a factual finding of the Board only upon a conclusion that the finding was "clearly erroneous." 38 U.S.C. § 7261(a)(4) (formerly § 4061(a)(4)). Upon consideration of the record, it is the holding of the Court that appellant has not demonstrated that the Board of Veterans' Appeals committed either factual or legal error in denying service connection for residuals of frostbite which would warrant reversal. *See Gilbert v. Derwinski,* 1 Vet. App. 49 (1990); *see also Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States,* 899 F.2d 3 (Fed.Cir.1990). Summary disposition is appropriate when, as here, the issue is of relative simplicity and the outcome is not reasonably debatable. *See Frankel v. Derwinski,* 1 Vet.App. 23, 25–26 (1990).

### IV. CONCLUSION

For the reasons stated above, the Secretary's motion for summary affirmance will be granted in part and denied in part. That portion of the decision which denied service connection for arthritis is VACATED and the matter is REMANDED pursuant to 38 U.S.C. § 7252(a) (formerly § 4052(a)) for further proceedings consistent with *Bailey v. Derwinski* and this opinion. The Board's decision of March 19, 1991, to the extent that it denied service connection for residuals from frostbite, is AFFIRMED.

*It is so Ordered.*