Barbara T. SUSSEX, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–1118.

United States Court of Veterans Appeals.

Submitted Aug. 9, 1991.

Decided Oct. 18, 1991.

As Amended Oct. 31, 1991.

Barbara T. Sussex, pro se.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, Washington, D.C., and Michael R. Smalls, Capitol Heights, Md., were on the pleadings for appellee.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

In a June 28, 1990, decision, the Board of Veterans' Appeals (BVA or Board) denied the appellant's claim for dependency and indemnity compensation (DIC) benefits on the ground that the record did not establish that her veteran husband's death resulted from service-connected disability. The appellant, proceeding *pro se*, argues on appeal to this Court that the Board's decision was clearly erroneous. For the reasons below, the Board's decision is vacated and remanded with instructions.

### I.

The veteran, Thomas M. Sussex, served on active duty during World War II, from December 17, 1943, to November 29, 1945. R. at 1. From December 21, 1944, to March 30, 1945, he was confined as a prisoner of war (POW) in Germany. R. at 7, 24. Upon his release, the veteran weighed 87 pounds; he had apparently weighed 132 pounds upon entry into service. R. at 25. In approximately 1964, the appellant was diagnosed as having diabetes. R. at 10. One decade later, he was diagnosed with a heart condition. R. at 9. His service records are apparently unavailable. R. at 8.

On September 28, 1983, a Veterans' Administration (now the Department of Veterans Affairs) Regional Office (VARO) rating board granted a 10–percent disability rating for anxiety neurosis, but denied service connection for the veteran's heart condition, diabetes, frozen feet, and residuals of malnutrition. R. at 55–57. The decision was not appealed.

The veteran died on November 5, 1985, at the age of 60. The death certificate stated that the immediate cause of death was azotemia ("an excess of urea or other nitrogenous compounds in the blood" (*Dorland's Illustrated Medical Dictionary* 177 (27th ed. 1988))) "due to or as a consequence of ... Kimmelstiel–Wilson Disease" ("a degenerative complication of diabetes" (*id.* at 701)), which itself resulted from "Diabetes Mellitus". The certificate also noted that "Cardiomyopathy" (disease of the muscular tissue of the heart (*id.* at 274)) was a significant condition contributing to death but was not related to the immediate cause of death. R. at 65.

The appellant's claim for DIC benefits was denied by the VARO on September 21,

1988, on the ground that the evidence did not establish that death resulted from service-connected disability. R. at 180–181. The appellant's September 16, 1989, "Appeal to [the] Board of Veterans' Appeals", filed on Form 1–9, claimed that the veteran's death had resulted from his service-connected anxiety neurosis, thereby entitling her to DIC benefits. R. at 193. In support of her appeal, the widow asserted that "[the veteran's] private physicians have stated that his anxiety condition contributed to his Kimmelstiel–Wilson disease and diabetes mellitus" and submitted with her Form 1–9 the statements of two treating physicians. R. at 189–191.

Discussing the veteran's condition in a July 23, 1989, letter, Dr. Thomas L. Hackett stated that the veteran's Kimmelstiel-Wilson disease was the "end result" of diabetes and hypertension. He further stated that diabetes has many potential sources, making a determination in a particular case difficult. R. at 190. However, he implicitly proffered starvation as an explanation by comparing the similarity of experiences of the veteran, while imprisoned in Germany, and Native Americans. He stated in pertinent part:

> Diabetes is common among the American Indians. One of the explanations is the long history of 'feast and famine'. The tribes would stuff themselves when food was plentiful and go long periods with little or no food.

R. at 190.

Dr. Charles L. Oppy, the veteran's physician for many years, stated in an August 17, 1989, letter that to his knowledge there was no history of diabetes in the veteran's family. Moreover, he stated that the veteran's "[diabetes] may well have developed from nutritional or infectious insult to his endocrine system at the time of his confinement as a prisoner of war." R. at 191.

In a decision dated June 28, 1990, the BVA affirmed the VARO rating decision denying DIC benefits. *Madonna B. Sussex*, (a k a Barbara K. Sussex) BVA 90– —— (June 28, 1990). The Board considered the statements of the two treating physicians but dismissed them (*see* 38 C.F.R. § 19.-112(b) (1990) (permitting the Board, on its own motion, to consider evidence not before the VARO)), stating in pertinent part:

> While we note that two recent statements by private physicians who had treated the veteran have been submitted in support of the current claim, we are unable to conclude that they provide a persuasive basis for a grant of the benefit at issue **in light of the evidence with the application of generally accepted medical principles.** . . . [T]he assertion of the existence of a causal relationship between any incidence of the veteran's period of military service, including his prisoner-of-war captivity, and any of his fatal disease processes is **speculative in nature** and without any significant support in the evidentiary record.

*Sussex*, BVA 90– ——, at 5 (emphasis added). The Board thus concluded that the veteran's causes of death—heart disease, diabetes, and kidney failure—were not service connected, that they were not "etiologically related to" his service-connected anxiety neurosis, and that, therefore, a disease of service origin "did not cause or contribute substantially or materially to cause the veteran's death." *Id.* at 6.

## II.

■■■■ Under 38 U.S.C. § 7104(d)(1) (formerly § 4004) and *Gilbert v. Derwinski*, 1 Vet.App. 49, 56 (1990), the BVA is required to include in its decisions not only a written statement of its findings and conclusions but also the reasons or bases for them. Moreover, where, as here, a veteran's service medical records are unavailable through no fault of his own, the BVA bears a heightened obligation to "explain its findings and conclusions and to consider carefully the benefit-of-the-doubt rule". *O'Hare v. Derwinski*, 1 Vet.App. 365, 367 (1991); *see also Moore v. Derwinski*, 1 Vet.App. 401, 405–06 (1991); *Godwin v. Derwinski*, 1 Vet.App. 419, 426 (1991). The Board erred in performing both tasks.

The Court has previously delineated what may or may not constitute an adequate statement of reasons or bases. In

*Colvin v. Derwinski*, 1 Vet.App. 171, 174–75 (1991), it was stated in pertinent part:

> [The BVA may not refute] the expert medical conclusions in the record with its own unsubstantiated medical conclusions. BVA panels may consider only independent medical evidence to support their findings. If the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination or [quoting] recognized medical treatises in its decisions that clearly support its ultimate conclusions.

*Id.* (Citations omitted.)

■ The Board's decision here, which rests upon "generally accepted medical principles" and which dismisses the conclusions of the veteran's private physicians as "speculative", does not accord with *Colvin*'s prescription for an adequate statement of reasons or bases. The Board did not cite contrary evidence in the record or quote a medical treatise or an advisory opinion to support these assertions. *See Bailey v. Derwinski*, 1 Vet.App. 441, 446–47 (1991). Thus, its findings are unsupported by independent medical evidence and cannot withstand scrutiny.

■ The Board's conclusory "benefit-of-the-doubt" statement similarly lacks an adequate "reasons or bases" analysis. The Board merely stated that "even with consideration of the doctrine of reasonable doubt, we are unable to reach a favorable determination in this case." *Sussex*, BVA 90–—, at 5. The Court held in *Gilbert* that the "reasons or bases" requirement of 38 U.S.C. § 7104(d)(1) applies to the Board's "conclusion that the veteran is not entitled to the 'benefit of the doubt' under 38 U.S.C. § 3007(b) [now § 5107(b)]." Consequently, a "bare conclusion", as was stated here, that the "benefit-of-the-doubt" doctrine does not apply, is inadequate. *Gilbert*, 1 Vet.App. at 59. This inadequacy is more pronounced in light of the Board's heightened obligation to carefully consider the "benefit-of-the-doubt" doctrine due to the unavailability of the veteran's service

medical records. *O'Hare*, 1 Vet.App. at 367.

The Board's conclusory statements with regard to the medical evidence and the "benefit-of-the-doubt" doctrine frustrate the letter of the "reasons or bases" requirement as well as its underlying purpose, enabling the appellant here to understand neither the precise basis for the decision nor the Board's response to the arguments she posed. *See Gilbert*, 1 Vet.App. at 56. Furthermore, such statements impede this Court's ability to review the BVA decision. *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990); *Gilbert*, 1 Vet.App. at 56–57.

The Court has recently reversed on clearly erroneous grounds (*see* 38 U.S.C. § 7261(a)(4) (formerly § 4061)) denials of service connection when the BVA had dismissed medical opinions from private treating physicians that definitively connected the veteran's disability with his service. *See Meister v. Derwinski*, 1 Vet.App. 472 (1991); *Hanson v. Derwinski*, 1 Vet.App. 512 (1991); *Cerullo v. Derwinski*, 1 Vet.App. 391 (1991). This is not such a case because the statement of Dr. Oppy, the more conclusive of the two, is not sufficiently definitive ("may well have"). The medical evidence offered by the claimant does, however, require a thorough evaluation by the BVA and cannot be rejected without independent medical evidence to support the Board's conclusions.

■ The Department of Veterans Affairs (VA or Department) is similarly obliged under 38 U.S.C. § 5107(a) to assist claimants in developing the facts pertinent to their claims. Under this provision, a claimant bears the initial burden of submitting evidence "sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." "A well grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation." *Murphy*, 1 Vet.App. at 80–81; *Moore*, 1 Vet.App. at 405. Thus, the claim need not be conclusive. Here, the appellant has satisfied this burden in presenting the medical opinions of two treating physicians who posited that the

veteran's diabetes may have had its origin in service. Dr. Hackett apparently analogized the veteran's POW experience to the Native Americans' experience of "feast and famine" which he had used to explain their high frequency of diabetes. R. at 190. Dr. Oppy concluded that the veteran's diabetes "may well have developed" from his experience as a POW. R. at 191. Together, this evidence, if credited, makes plausible the appellant's claim of service connection based on the cause of death.

The claimant having submitted a well-grounded claim, section 5107(a) requires that the Secretary assist her "in developing the facts pertinent to the claim." Although the Board, obviously, could not have ordered a medical examination, the issues raised before it presented an appropriate case in which to seek an advisory medical opinion concerning the relationship between the veteran's POW experience and his diabetes and heart disease. Upon remand, such action would be a viable way for the BVA to fulfill its duty to assist the appellant.

### III.

Upon consideration of the record, the appellant's informal brief, and the Secretary's motion, it is held that the BVA has failed to articulate, pursuant to 38 U.S.C. § 7104(d)(1) and the analysis in *Gilbert*, the reasons or bases for its decision. It is further held that the Department did not properly uphold its obligation under 38 U.S.C. § 5107(a) to assist the appellant in developing the facts pertinent to her claim. The criteria for summary disposition set forth in *Frankel v. Derwinski*, 1 Vet.App. 23 (1990), are met. Accordingly, under this Court's precedents in *Gilbert, Colvin,* and *Bailey,* the June 28, 1990, BVA decision is vacated, and the matter is remanded to the Board for readjudication and disposition in accordance with this memorandum decision. This Court retains jurisdiction. The Secretary shall file with the Clerk and serve upon the appellant a copy of the Board's decision on remand. Within 14 days after such filing, the appellant shall notify the Clerk whether she desires to seek further review by the Court.

VACATED AND REMANDED.