Josephine **PHILBRICK**, Appellant,

v.

Edward J. **DERWINSKI**, Secretary of Veterans Affairs, Appellee.

No. 91–958.

United States Court of Veterans Appeals.

May 26, 1992.

Before STEINBERG, Associate Judge.

ORDER

Appellant Josephine Philbrick, spouse of deceased veteran James J. Philbrick, appeals a February 14, 1991, Board of Veterans' Appeals (BVA or Board) decision denying her entitlement to disability and indemnity compensation (DIC), under 38 U.S.C. § 1310 (formerly § 410), for the cause of her veteran husband's death. *James J. Philbrick*, BVA 91–04122 (Feb. 14, 1991). Summary disposition is appropriate in this case because it is one "of relative simplicity" and the outcome is controlled by our precedents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet. App. 23, 25–26 (1990).

The deceased veteran served on active duty in the military from August 1943 to November 1945. For approximately five months during this time, he was held by the German government as a prisoner of war (POW). At the time of his death, the veteran had been receiving service-connected disability compensation for several maladies and had been awarded noncompensa-

ble service connection for others. R. at 358–59. The service-connected disabilities included post-traumatic stress disorder, residuals of frozen feet, stomach ulcer, irritable bowel syndrome, hepatitis, peripheral neuropathy of the extremities, inactive pyoderma, residuals of vitamin deficiency, and residuals of pellagra. Together, these disabilities rendered him 60% disabled for Department of Veterans Affairs (VA) purposes. *See* 38 C.F.R. § 4.25 (1991). The BVA concluded that the veteran's cause of death—congestive heart failure due to ventricular septal defect, which, in turn, was due to myocardial infarction (R. at 370)— was not itself shown to be service connected; nor were any of the above service-connected disabilities considered to have caused the heart problems leading to his death. *Philbrick*, BVA 91–04122, at 6–7.

The Secretary of Veterans Affairs (Secretary) argues that the BVA's findings should be upheld but that the case should be remanded solely for the Board to supplement its decision by sufficiently articulating the reasons or bases for its existing decision. Appellee's Brief at 19. Appellant, on the other hand, contends, primarily, that the Board's findings of fact must be set aside as clearly erroneous. Appellant's Brief at 16. In the alternative, she requests that the case be remanded so that the BVA may apply the benefit-of-the-doubt-doctrine, under 38 U.S.C. § 5107(b) (formerly § 3007), and fulfill its statutory duty to assist her, under 38 U.S.C. § 5107(a), in developing the facts pertinent to her claim.

Some evidence exists in the record which supports appellant's theory that the heart problems causing the veteran's death grew out of his service-connected conditions. *See* 38 C.F.R. § 3.310(a) (1991). The veteran, himself, had asserted in an appeal to the BVA and, under oath, during a VA hearing, that, during a medical examination conducted in late 1945, the physician instructed him to avoid hiking, marching, heavy work of any kind, and mental strain. The veteran asserted that he received no explanation for these instructions, and the record does not contain any report in which they were set forth. R. at 165, 311.

During appellant's BVA hearing, she testified, under oath, regarding possible manifestations of heart problems after the veteran's discharge from service. She stated that beginning before 1950, he fatigued easily and would become short of breath when climbing stairs or walking "for any distance". R. at 407–08. Her daughter testified, under oath, that she had similar recollections beginning in her early childhood. R. at 410–13.

Appellant's representative asserted during the BVA hearing that the physician conducting the initial autopsy had no knowledge that the veteran had been a POW. The pathologist stated to the representative that, had he known, he would have conducted different tests. R. at 405. The medical opinion provided by Dr. J.W. Onstad, Chairperson of the Department of Pathology at St. Elizabeth's Hospital in Yakima, Washington, is most supportive of appellant's position. R. at 423. He indicated in his report that he reviewed the autopsy report, prepared slides from the deceased, reviewed literature, and engaged in "professional consultation concerning imprisonment with reported vitamin, protein and carbohydrate malnutrition". Dr. Onstad also noted the similarities between the cause of death of this veteran and that of another former POW on whom he had conducted an autopsy (Appellant's Brief at 15), stating, inter alia, that Mr. Philbrick "has increased ventricular septal perivascular and interstitial fibrous tissue similar to that seen in [the other former POW]". *Ibid.* He concluded:

[I]n my professional opinion, Mr. James J. Philbrick more probable [sic] than not suffered irreversible heart damage (myocardial fiber loss) as a prisoner of war. Undernutrition and starvation have been reported to be associated with marked reduction of heart size corresponding to the loss of body weight. Any gastrointestinal [or] hepatic diseases/dysfunction would accentuate the underlying protein and carbohydrate malnutrition, as well as vitamin deficiency.

*Ibid.* Dr. Onstad's theory is supported by evidence in the record suggesting that the

veteran was malnourished during his internment as a POW. First, the veteran was awarded noncompensable service connection for the residuals of vitamin deficiency. R. at 347. Also, a fellow former POW attested, in a notarized statement, that all but 39 of the 139 POWs in their camp had died and most had died from starvation. Furthermore, the former POW stated that all of the survivors had lost at least 60 pounds. R. at 421. Moreover, the veteran had been awarded service connection for gastrointestinal and hepatic conditions, to which Dr. Onstad referred in his report.

In its February 14, 1991, decision denying appellant entitlement to DIC benefits, the BVA rejected Dr. Onstad's opinion as "highly speculative and based more on statistics than on specific clinical findings referable to the veteran's case." *Philbrick*, BVA 91–04122, at 5. The Board went on to state that "the cardiovascular disease appears to have been so overwhelming as to cause the veteran's death irrespective of his service-connected disabilities." *Id.* at 6. In addition, the Board offered only a cursory conclusion that the benefit-of-the-doubt doctrine cannot be applied in appellant's favor.

These excerpts from the BVA decision point to several legal shortcomings in the BVA's evaluation that require that the case be remanded. First, its dismissal of Dr. Onstad's medical opinion was too cursory and conclusory to satisfy the statutory requirement that the BVA provide reasons or bases for its findings and conclusions of fact. *See* 38 U.S.C. § 7104(d)(1) (formerly § 4004); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56 (1990). *Gilbert* requires that the Board's reasons-or-bases analysis be "clear" and "succinct" and its explanations "complete". *Id.* at 57. Since Dr. Onstad stated that he had examined the deceased veteran, prepared slides for the purpose of evaluating the cause of death, researched available literature, and consulted with colleagues to formulate his opinion that more probably than not the veteran suffered irreversible heart damage as a POW, the Board's conclusions that the physician's opinion was "highly speculative" and

"based more on statistics" were inadequate to explain why that opinion was rejected. *Philbrick*, BVA 91–04122, at 5.

Second, the BVA's conclusion that the veteran's heart disease "was so overwhelming" that it alone caused his death, "irrespective of his service-connected disabilities", was not supported by medical evidence of record or quotations from recognized medical treatises. Hence, there was no basis for this conclusion, so it, too, violated the reasons or bases requirement of 38 U.S.C. § 7104(d)(1). *See Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991). In *Colvin*, the Court concluded that the Board may not "refut[e] the expert medical conclusions in the record with its own unsubstantiated medical conclusions", *id.* at 175, for to do so precludes the veteran from determining whether a basis exists for appeal to this Court and provides the Court with an inadequate record to review. *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990); *see also* 38 U.S.C. § 7109 (formerly § 4009) (Board may secure independent advisory medical opinion).

Since the record contains no medical evaluations of the deceased veteran which contradict Dr. Onstad's opinion, and since the BVA seems to have believed that Dr. Onstad's examination was inadequate, it appears, from the cursory conclusions drawn, that the Board believed that it did not have before it a complete record for review. If the Board believed that the evidence of record, including Dr. Onstad's opinion, was inadequate for the purposes of review, it was "required by [VA] regulations to have remanded the case to the agency of original jurisdiction". *Meister v. Derwinski*, 1 Vet.App. 472, 473 (1991); *see* 38 C.F.R. § 19.182(a) (1991) (reformulated in 57 Fed. Reg. 4,105 (1992) (to be codified at 38 C.F.R. § 19.9)); *see also* 38 U.S.C. § 5109 (formerly § 3009) (regional office may secure independent advisory medical opinion). This obligation flows not only from § 19.182(a), but also from the Secretary's statutory duty to assist a claimant to develop facts pertinent to a well-grounded claim. 38 U.S.C. § 5107(a) (formerly § 3007). Appellant's claim, buttressed by Dr. Onstad's

opinion and sworn statements that support the doctor's theory, is, as a matter of law, well-grounded since it is a "plausible claim, one which is meritorious on its own or capable of substantiation". *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990).

Moreover, the Board nowhere mentioned or applied 38 U.S.C. § 1154(b) (formerly § 354), which provides, in the case of any veteran who has engaged in enemy combat, inter alia, that the Secretary "shall accept as sufficient proof" of in-service causation of any disease or injury "satisfactory lay or other evidence of service incurrence or aggravation ... if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation". *See also* 38 C.F.R. § 3.304(d) (1991). Because the veteran engaged in combat in World War II, evaluation of his record falls within the purview of section 1154(b). Therefore, the absence of official medical service records showing dramatic weight loss or damage to the heart during service could not have been determinative of the outcome here. The BVA was required to consider the lay statements, a medical opinion, and a definite indication in the record that the circumstances or hardships to which the veteran was subjected were consistent with Dr. Onstad's findings.

Section 1154(b) further requires that in evaluating the record of a combat veteran, the BVA "resolve every reasonable doubt in favor of the veteran". 38 U.S.C. § 1154(b). The Board was required not only to apply section 1154(b), but also to explain its reasons or bases for not granting the veteran the benefit of the doubt, given the supportive evidence that exists. *See* 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet. App. at 56; *Sussex v. Derwinski*, 1 Vet. App. 526, 529 (1991). Where, as here, service medical records are not available, "the BVA's obligation to explain its findings and conclusions and to consider carefully the benefit-of-the-doubt rule is heightened." *O'Hare v. Derwinski*, 1 Vet.App. 365, 367 (1991); *see Godwin v. Derwinski*, 1 Vet. App. 419, 426–27 (1991) (holding that BVA failed to provide satisfactory explanation

as to why sworn testimony and six lay statements were not sufficient evidence to apply benefit-of-the-doubt rule in 38 U.S.C. § 5107(b) or the reasonable doubt rule in 38 U.S.C. § 1154(b) to establish connection between hearing problem and combat military service). There is no indication that either of those tasks was carried out by the Board here.

Although the evidence in the record favors appellant's claim, it is not sufficiently conclusive, absent an adequate statement of reasons or bases, to warrant a finding by the Court at this time, under 38 U.S.C. § 7261(a)(4) (formerly § 4061), that the BVA's findings of fact were clearly erroneous and must be reversed. *Compare Hanson v. Derwinski*, 1 Vet.App. 512, 516 (1991) (holding clearly erroneous BVA finding that appellant's Tourette's syndrome was not incurred during service where treating physician "expressly stated" that illness began in service); *Meister v. Derwinski*, 1 Vet.App. at 473 (holding clearly erroneous BVA finding that shoulder disorder was not related to service-connected right forearm amputation where two physicians opined that amputation caused shoulder problem), *with Sussex v. Derwinski*, 1 Vet.App. 526, 529 (1991) (remand required where medical opinion on causation not sufficiently definitive ("may well have")).

In view of the foregoing and upon consideration of the record and the parties' briefs, it is held that the BVA failed to adhere to the requirements of 38 U.S.C. §§ 1154(b), 5107(a), (b), 7104(d)(1), and this Court's precedents in *Gilbert, Colvin,* and *Godwin,* all *supra*. Consequently, it is

ORDERED that the February 14, 1991, BVA decision is vacated and the matter remanded for readjudication and disposition, consistent with this order and *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), within 90 days after the date of this order. Prompt attention to the matter is necessary in light of appellant's fragile health. The Court retains jurisdiction. It is further

ORDERED that the Secretary shall file with the Clerk and serve upon appellant a copy of any BVA final decision on remand.

Within 14 days after such filing, appellant shall notify the Clerk whether she desires to seek further review by the Court.