Helen B. CURL, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–1125.

United States Court of Veterans Appeals.

Aug. 12, 1992.

Before STEINBERG, Associate Judge

MEMORANDUM DECISION

STEINBERG, Associate Judge:

The pro se appellant, Helen B. Curl, surviving spouse of veteran Charles H. Curl, appeals from a June 14, 1990, Board of Veterans' Appeals (BVA or Board) decision denying her claim for dependency and indemnity compensation (DIC) benefits on the ground that the record did not show that the veteran's death resulted from a service-connected disability. The Secretary of Veterans Affairs (Secretary) has moved

for summary affirmance. Because the Court finds that the Board failed to provide an adequate statement of the reasons or bases for its findings and conclusions and to carry out fully its duty to assist the appellant, the Secretary's motion will be denied and the Board's decision will be vacated and the record remanded for readjudication of the appellant's claim.

## I. BACKGROUND.

The veteran, Charles H. Curl, served on active duty in the United States Air Force from February 1943 to November 1953 and from January 1954 to September 1963. *Helen B. Curl*, BVA 90–19677, at 2 (June 14, 1990). While in the service the veteran contracted pulmonary tuberculosis (PTB). R. at 225. Although in 1971 the veteran developed moderately advanced granulomatous disease—nodules of chronically inflamed tissue usually associated with an infective process (WEBSTER'S MEDICAL DESK DICTIONARY 274 (1986))—the PTB remained inactive throughout the remainder of the veteran's life. R. at 226, 234–35, 244, 254. The record does not indicate if PTB was the "infective process" with which the granulomatous disease may have been associated. These granulomas (nodules), located in the middle and upper portions of the right lung, were discovered in November 1971 and remained essentially static throughout the veteran's life. R. at 226, 237–39, 248–49, 276–302. In January 1972, following the discovery of the granulomas, the Veterans' Administration (now Department of Veterans Affairs) (VA) Regional Office (RO) increased to 30% the veteran's noncompensable disability rating for pulmonary tuberculosis, moderately advanced, inactive. R. at 234–35. In June 1978, a private physician diagnosed the veteran as having moderately severe chronic obstructive pulmonary disease (COPD). R. at 236. In November 1982, a VA medical examination for disability evaluation also identified moderately severe COPD. R. at 244. One of the tests performed in conjunction with this examination noted that the COPD significantly improved with bronchodilators. R. at 247.

A January 1983 RO decision incorporated the COPD in its evaluation and identified the veteran's service-connected condition as: "Pulmonary tuberculosis moderately advanced, inactive with moderately severe chronic obstructive pulmonary disease." R. at 254. There was no discussion of the basis for extending service connection to the COPD or for combining the COPD and PTB into one service-connected disability. In the January 1983 RO decision, the veteran's disability rating for the combined disability was reduced from 30% to 20%, the RO noting that the PTB was completely arrested. R. at 254.

In September 1988 the veteran was hospitalized in a VA facility, complaining chiefly of weakness in the legs, incontinence, and advancing dementia. R. at 256. After undergoing surgery to insert a shunt to drain off excess fluid in his brain, the veteran contracted pneumonia. R. at 291. In mid-November 1988, the veteran's VA hospital charts indicated a growing indistinctness of pulmonary vascularity (explained under part II. F., *infra*) which was consistent with his worsening pulmonary edema. R. at 297–300. Pneumonia was the primary cause of the veteran's death on November 29, 1988. R. at 261. The death certificate stated that the pneumonia was "[d]ue to or as a consequence" of the end-stage dementia for which he was hospitalized. R. at 261.

The appellant applied for DIC benefits, but the VARO denied eligibility, stating that the veteran's service-connected disability of PTB was not shown to have materially contributed to his death. R. at 262, 266. There was no mention of the veteran's COPD in that decision. In the appellant's Form 1–9 Appeal to the BVA, she stated: "I believe the service-connected respiratory disease did materially and substantially contribute to his death. (38 C.F.R. § 3.312) It is reasonable to hold that his service-connected condition accelerated his death because the lungs are a vital organ and his disability of COPD was of itself of a progressive and debilitating nature. (38 C.F.R. § 3.312)". R. at 303. The BVA denied service connection for the veteran's death. *Curl*, BVA 90–19677, at 6.

## II. ANALYSIS.

A service-connected disability is considered to have contributed to the cause of a veteran's death when it is shown that it contributed "substantially and materially ... to the production of death." 38 C.F.R. § 3.312(c)(1) (1991). Even in cases where the primary cause of death is so "overwhelming" that death would have resulted regardless of the existence of a service-connected disability, a service-connected condition may be found to be a contributory cause of death where that condition has had a "material influence in accelerating death" because it "affected a vital organ [such as the lungs] and was of itself of a progressive or debilitating nature". 38 C.F.R. § 3.312(c)(4) (1991).

The Board held that "a service-connected disorder" did not materially or substantially contribute to the veteran's death. *Curl,* BVA 90–19677, at 6. However, the Board's "DISCUSSION AND EVALUATION" is rife with ambiguities which make it impossible for the Court to carry out meaningful review of the Board's decision or for the appellant to understand its rationale. Thus, its statement of the reasons or bases for its decision is inadequate. 38 U.S.C. § 7104(d)(1) (formerly § 4004); *see Sammarco v. Derwinski,* 1 Vet.App. 111, 113 (1991) ("BVA's decision must express findings with sufficient detail and clarity to achieve two critical purposes: to inform the claimant and to make meaningful review by this Court possible"); *see also Hanson v. Derwinski,* 1 Vet.App. 512, 518 (1991); *Hatlestad v. Derwinski,* 1 Vet.App. 164, 168 (1991); *Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990).

In its "DISCUSSION AND EVALUATION", the Board set forth its reasoning in a series of statements that are replete with ambiguities, imprecision, and unstated assumptions:

It has been asserted that the veteran's service-connected inactive pulmonary tuberculosis with moderately severe chronic obstructive pulmonary disease played a material role in the veteran's death. While the chronic service-connected respiratory disorder certainly affected a vital organ, the record shows that pulmo-

nary tuberculosis had been inactive for many years and was not progressive or debilitating in nature. We note in this regard that the evidence shows this particular respiratory disorder was significantly improved with medication. Moreover, the evidence shows that the veteran's fatal pneumonia was aspiratory in nature and arose in a segment of the lungs different from that affected by the veteran's service-connected respiratory disability.

The inadequacies in the BVA's reasons or bases, analyzed below, should be addressed by the Board on remand.

### A.

A pervasive ambiguity in the Board's "DISCUSSION AND EVALUATION" is the lack of an explicitly defined term of reference for the veteran's disability. The BVA's combined reference to "the veteran's service-connected inactive pulmonary tuberculosis with moderately severe chronic obstructive pulmonary disease" in the first sentence is not consistently used and distorts at least two things: First, the combined reference reflects the assumption made in the January 1983 RO decision that the respiratory conditions, PTB and COPD, are linked and service connected, although the justification for that conclusion was never made explicit, by either the RO or the Board. Second, the BVA's placement of the word "inactive" before "pulmonary tuberculosis", instead of after that term (as was done in the January 1983 RO decision and previous diagnoses), seems to extend the PTB's inactive status to the COPD without a determination that the COPD was, in fact, inactive. The BVA apparently treats the veteran's PTB and his later acquired COPD as one disease but does so without explanation or justification. An impression is created that the BVA is simply ignoring the possible contribution of COPD to the veteran's death.

Although the appellant asserted in her Form 1–9 appeal that COPD, in and of itself, was of a progressive and debilitating nature, the BVA never separately addressed the veteran's COPD. Part of the BVA's obligation in setting out its reasons

or bases is to " '[p]ermit a claimant to understand the Board's response to the **various arguments advanced by the claimant.**' " *Gilbert,* 1 Vet.App. at 56 (quoting S.Rep. No. 418, 100th Cong., 2d Sess. 38 (1988)) (emphasis added). Even if the BVA felt it was inappropriate to treat the conditions separately, its reasons or bases for so concluding should be laid out to enable the appellant to understand the Board's response to her argument. The explanation that the Board provided was too cursory to enable the Court or the appellant to understand why the COPD alone was not found to play a material role in the cause of the veteran's death. The Board's explanation acknowledges the appellant's allegation and admits that a vital organ was affected but says only that the PTB was inactive. "A bare conclusory statement, without both supporting analysis and explanation is neither helpful to the veteran, nor 'clear enough to permit effective judicial review', nor in compliance with statutory requirements." *Id.* at 57.

### B.

The next sentence in the Board's decision, beginning "While the chronic ...", is problematic in several respects: First, as noted above, it is ambiguous whether the terms "chronic service-connected respiratory disorder" and "pulmonary tuberculosis" include both PTB and COPD. An inaccuracy which results from this ambiguity is illustrated by the BVA's apparent conclusion that since the PTB had been inactive for many years it could not be considered progressive or debilitating. This conclusion ignores the veteran's COPD. It is not disputed, and the record demonstrates, that the PTB was inactive for many years. But it is not clear from the record or from the Board's decision that the COPD also was inactive.

Second, even if, arguendo, both respiratory conditions were inactive and, thus, not progressing, they still may have been debilitating. Under 38 C.F.R. § 3.312(c)(4), when the primary cause of death is overwhelming, a service-connected disability affecting a vital organ may, nonetheless, be considered to contribute to a veteran's death if it is shown to be of a progressive *or* debilitative nature. Debilitate is defined as: "[T]o make weak". WEBSTER'S NEW WORLD DICTIONARY 355 (3d ed. 1988). According to the schedular criteria for inactive pulmonary tuberculosis, the 20% disability rating in effect at the time of the veteran's death indicated that there was "[c]ontinued disability, emphysema, dyspnea on exertion, impairment of health, etc.". 38 C.F.R. § 4.97, Diagnostic Code 6724 (1991). Perhaps the level of debilitation resulting from the veteran's PTB and COPD did not amount to the "material influence in accelerating death" required in 38 C.F.R. § 3.312(c)(4), but, again, that conclusion was not spelled out by the Board.

### C.

If, once again, it is assumed that the COPD was active, it is evident that the Board also failed to consider a strong regulatory basis for the appellant's claim, one which covers the contribution of **active** service-connected disabilities, 38 C.F.R. § 3.312(c)(3) (1991). That regulation provides, in pertinent part: "Service-connected diseases or injuries involving **active** processes **affecting vital organs** should receive careful consideration as a contributory cause of death ... from the viewpoint of whether there were resulting **debilitating effects** and general impairment of health to an extent that would render the person **materially less capable of resisting** the effects of other disease or injury primarily causing death." 38 C.F.R. § 3.312(c)(3) (emphasis added). Under § 3.312(c)(3), the condition must make the veteran **less capable of resisting** the primary cause of death rather than act as an **accelerator** of death as under § 3.312(c)(4). This regulatory framework for evaluating the causal contribution of COPD, if active, to the veteran's inability to resist the onslaught of his fatal pneumonia should have been considered and discussed. Thus, the BVA may have failed to consider an appropriate regulation, one that was apparent from the record. *See* 38 C.F.R. § 19.103 (1991); *Akles v. Derwinski,* 1 Vet.App. 118, 121 (1991) ("[t]here is no requirement in the

law that a veteran must specify with precision the statutory provisions or the corresponding regulations under which he is seeking benefits").

The Court is in doubt regarding this regulation because of the Board's implicit, conclusory assumption that the COPD was inactive and non-debilitating. Moreover, application of 38 C.F.R. § 3.312(c)(3) may be foreclosed by a determination that the primary cause of death was overwhelming, as defined in 38 C.F.R. § 3.312(c)(4). However, the BVA's reasons or bases are not adequate for the Court to conclude that the appellant cannot prevail under 38 C.F.R. § 3.312(c)(3).

### D.

The Board's next sentence, which discusses improvement of the veteran's disorder with medication, merely compounds the confusion as to whether the BVA is subsuming the veteran's COPD under his PTB. The phrase "this particular respiratory disorder" is used, apparently, to refer to the veteran's PTB as discussed in the preceding sentence. However, it appears that it is the COPD which responded to medication not the PTB which was inactive. Also, even if the COPD responded to bronchodilators, that response would not be dispositive regarding whether the COPD was "progressive or debilitating in nature". 38 C.F.R. § 3.312(c)(4). The record does not disclose whether the bronchodilators were curing the COPD, halting its progress, or merely relieving its symptoms.

### E.

The significance of the Board's observations, made in its next sentence, regarding the aspiratory nature of the veteran's pneumonia and its place of origin in his lungs, is unclear because of a lack of justification in the decision. It is not clear whether these bare observations require a finding that the COPD was not contributory, or whether it remains plausible that the effect of the COPD was to increase the veteran's respiratory difficulties overall and perhaps exercise a debilitating effect on or general impairment of the veteran's

ability to resist the pneumonia. The Board failed to explain, by utilizing independent, recognized medical authority rather than its own medical opinion, why the aspiratory nature of the veteran's pneumonia supports its conclusion. *See Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991) ("BVA panels may consider only independent medical evidence to support their findings"); *Sussex v. Derwinski*, 1 Vet.App. 526, 529 (1991) (Board's decision, which rested on "generally accepted medical principles", was inadequate).

### F.

Furthermore, the Board's observation that the pneumonia arose in the segment of the lung unaffected by the veteran's service-connected "respiratory disability" is, presumably, made to rebut the appellant's assertion that the veteran's lungs were rendered more vulnerable to infection as a result of the service-connected disabilities. Two points are relevant in this regard. First, even if the initial pulmonary edema arose in a portion of the right lung different from those portions which were damaged by PTB, COPD appears to be a disease causing **generalized** airways obstruction (THE MERCK MANUAL 636 (15th ed. 1987)), and does not, apparently, affect just one area of the lungs. Thus, the originating location of the pneumonia does not, on its face, appear to eliminate the possible contribution of the COPD to the veteran's inability to resist the progress of the pneumonia. Second, the initial pulmonary edema appears to have broadened in scope as the veteran's condition worsened over time. The record indicates that in mid-November there was a growing indistinctness of pulmonary vascularity (X rays could not distinctly show the tubes or ducts of the veteran's lungs) which was consistent with the worsening pulmonary edema. This might be evidence that the pulmonary edema was encompassing a larger area of the lung, possibly including the upper and middle portions of the right lung which had suffered previous damage from PTB. Consequently, if the evidence raises a question as to the involvement of the area of the lung

previously damaged by the veteran's PTB or by his ongoing, generalized COPD, then an explanation of why those conditions are not considered either to debilitate or to impair the veteran's ability to resist the pneumonia, or materially to accelerate his death from pneumonia, is required in order to provide the Court with an adequate record for review. *Sammarco*, 1 Vet.App. at 113.

### III. CONCLUSION.

Upon consideration of the record, the Secretary's motion for summary affirmance, and the appellant's very articulate informal brief, it is held that the BVA has failed to state adequately, pursuant to 38 U.S.C. § 7104(d)(1) and the analysis in *Gilbert*, the reasons or bases for its decision. The Court expects critical examination to occur on remand, in which the Board will reexamine the evidence of record, seek additional evidence as necessary (including an advisory medical opinion concerning the relationship between the veteran's service-connected respiratory disabilities and his death from pneumonia, *Colvin*, 1 Vet.App. at 174–75 ("[i]f the medical evidence of record is insufficient … the BVA is always free to supplement the record by seeking an advisory opinion"); *see Sussex*, 1 Vet.App. at 530; 38 U.S.C. §§ 7109, 5109 (formerly §§ 4009, 3009); *Cousino v. Derwinski*, 1 Vet.App. 536, 540 (1991) (issues raised as to service connection of veteran's death may warrant independent medical opinion), and issue a well-supported decision. *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). Summary disposition is appropriate under *Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990). Accordingly, the Court vacates the June 14, 1990, BVA decision, retains jurisdiction, and remands the record to the Board for prompt readjudication and disposition in accordance with this decision. The Secretary shall file with the Clerk (as well as serve upon the appellant) a copy of any Board decision on remand. Within 14 days after the filing of a final such decision, the appellant shall notify the Clerk whether she desires to seek further review by the Court.

VACATED AND REMANDED.