Agustina L. GARCIA, Appellant,

v.

Anthony J. PRINCIPI, Acting Secretary of Veterans Affairs, Appellee.

No. 90–1129.

United States Court of Veterans Appeals.

Oct. 22, 1992.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

The pro se appellant, who claims to be the widow of World War II veteran Ernesto F. Garcia, appeals from the July 6, 1990, decision of the Board of Veterans' Appeals (BVA or Board) denying her claim for dependency and indemnity compensation (DIC) benefits. The BVA held that the veteran's death was not service connected. *Agustina L. Garcia in the Case of Ernesto F. Garcia*, BVA 90–22244 (July 6, 1990) (hereinafter *Garcia* ). The Secretary of Veterans Affairs (Secretary) has moved for summary affirmance. For the reasons set forth below, the Secretary's motion will be denied and the Board's decision will be vacated and the matter remanded for readjudication of the appellant's claim.

## I. BACKGROUND

The veteran served on active duty in recognized guerrilla service in World War II from January or February 1945 until November 1945, and he then served in the regular Philippine Army from November 1945 to May 1946 (R. at 3, 8). A report of a physical examination dated January 15, 1946, stated that a chest X ray showed tuberculosis (TB). R. at 1. The veteran was given an honorable discharge after he was found unfit for military service because of chronic pulmonary tuberculosis (PTB). R. at 3, 5. The veteran's discharge certificate stated the cause of discharge as "[p]hysical [d]isability [c]ontracted in line of duty". R. at 52. A Veterans' Administration (now Department of Veterans Affairs) (VA) Regional Office (RO) granted service connection for PTB, rated 70% disabling, effective May 22, 1946. Service connection remained in effect for the rest of the veteran's life; from September 1969 until his death on March 29, 1988, the rating was 50%. R. at 11, 26.

An April 1968 rating decision stated that X rays and negative laboratory findings showed "attainment of inactivity", a finding which, according to the rating decision, was affirmed by a VA TB Board. The rating decision stated "[t]uberculosis completely arrested from 9–26–67". R. at 11. The veteran was hospitalized in August 1985. The hospital record listed a diagnosis of "PTB, Moderately–Advanced", with additional diagnoses of pulmonary emphysema and a urinary tract infection. R. at 12. The record stated: "He has been coughing productive cough for past year with whitish phlegm, at times yellowish tenacious sputum." *Ibid.* An X-ray report prepared in December 1985 found that the veteran suffered from "PTB, mod. adv., bilateral, stationary from 2/2/81 to 3/21/ 85. [sic] to 8/30/85". R. at 16–17. In February 1986, the VARO denied a claim for an increased rating, stating that the "evidence does not show reactivation of the vet's [service-connected] PTB". R. at 18.

The veteran died on March 29, 1988. The record contains three different documents that purport to be death certificates. All three documents list the cause of death as "P.T.B./Far Advanced". All three list Dr. Francisco Galvez as the attending physician, although his signature appears on only one of the documents. R. at 19, 28, 29. In August 1988, the RO conducted a field examination in order to "gather evidence on which a determination maybe [sic] made as to the cause of the veteran's death". R. at 24. The field examination report stated that Dr. Galvez was the municipal mayor as well as a medical doctor, and that he had seen the veteran on an outpatient basis for more than a year. According to the report, Dr. Galvez stated that

he [Dr. Galvez] is more of a politician than a practising [sic] doctor in a sense that he used his being a doctor to see sick people and advise them on things to do; that in the case of the veteran he has not made any notes nor advised him to seek hospitalization or undergo X-rays and laboratory examinations; that from

his medical opinion the veteran was suffering from severe asthma and pulmonary tuberculosis ... and that based on his own medical opinion the PTB was the immediate cause of the death....

*Ibid.* Although the "Field Examination Request" dated May 1988 had asked the field investigator to depose Dr. Galvez, the report stated that "[d]ue to [Dr. Galvez's] busy schedule, a deposition was not resorted to". R. at 27, 24. The field investigator spoke with relatives of the veteran and witnesses of his death. They stated that the veteran had not sought medical advice after his 1985 hospitalization, and that Dr. Galvez had seen the veteran the day before his death. R. at 24.

The report also stated that the appellant and the veteran's son and daughter-in-law were interviewed and had reported that they had not been at the veteran's bedside when he died, had not kept track of the veteran's illnesses, and were not aware of "his other illnesses". "[T]hey have nothing to comment on the veteran's cause of death, except probably his long time disability, PTB." R. at 25. The report listed six "disinterested witnesses" who "have longstanding knowledge of the veteran suffering from asthma and chest condition" and who told the field investigator that the veteran "was suffering from severe body weakness prior to his death". *Ibid.*

On September 30, 1988, the RO denied service connection for the veteran's death. R. at 31. After reiterating the findings contained in the field examination report, the RO stated: "Evidence does not show sufficient facts and findings to establish that veteran's SC [service connected] PTB has caused or contributed to the death of veteran. The SC PTB has been inactive since September of 1967 and subsequent examination does not show that veteran's SC PTB has reactivated." The cause of death is listed as "Unknown". R. at 32.

In December 1988, the appellant reopened her claim, submitting an affidavit prepared by two of the veteran's service comrades. R. at 34–35. The affiants de-

scribed how the veteran's health had declined in 1946 when the veteran grew pale and complained of chest pains. The affiants stated that, even after the veteran's 1946 discharge due to TB, he had continued to suffer from TB until his death. R. at 34. The RO denied the reopened claim in February 1989. R. at 36. In the appellant's October 1989 substantive appeal to the BVA, she asserted that the veteran's PTB, far advanced, was the immediate cause of his death, and that "there were resulting debilitating effects and general impairment of health to an extent that would render the person materially less capable of resisting the effects of other diseases or injury primarily causing death". R. at 44.

In a May 1990 written submission to the Board, the appellant's representative asserted that the evidence of record clearly indicated that the symptoms (severe coughing, malaise, and sputum production) observed during the veteran's 1985 hospitalization were consistent with PTB. R. at 55–56. Further, the appellant asserted that the evidence of record demonstrated that the veteran's major complaints prior to death were body weakness, easy fatigability, and sputum production. The appellant stated that these symptoms were consistent with a "tuberculosis board report by Dr. A.N. DeCastro". No such report appears in the record on appeal (ROA), although, as noted above, the April 1968 rating decision makes reference to the findings of a "VA TB Board". R. at 11. In conclusion, the appellant noted that diseases affecting vital organs are to be carefully considered to take into account the resulting debilitation that would render any person less capable of resisting any coincident respiratory conditions. Cf. 38 C.F.R. § 3.312(c)(3) (1991). The appellant also argued that the severity of the veteran's respiratory condition, even if determined to be a contributory rather than the primary cause of death, substantially aided the onset of death. R. at 56.

˙ The BVA decision, dated July 6, 1990, stated that when the veteran was hospitalized in 1985 his PTB activity was "undeter-

mined", and that the December 1985 X-ray report, interpreting X rays from March and December 1985, found no evidence of active PTB. The decision noted Dr. Galvez's medical opinion that PTB was the cause of death, but the decision stressed that "[t]here were no radiographic studies or a hospitalization report to substantiate the opinion of the medical doctor." *Garcia,* at 4. Thus, the death certificate "is not considered to be of sufficient probative value to confirm that [PTB] had reactivated and was the cause of the veteran's death". *Ibid.* In conclusion, the BVA stated: "It is not shown that the veteran's death was due to a disability incurred in or aggravated by active service", the veteran's service connected PTB had not been shown to have caused or contributed to his death, and reasonable doubt had not been demonstrated. *Garcia,* at 4–5.

## II. ANALYSIS

■ Certain dependents of a veteran are entitled to DIC benefits if the veteran died from a service-connected disability. 38 U.S.C. § 1310 (formerly § 410). In cases where the primary cause of death is so "overwhelming" that death would have resulted regardless of the existence of a service-connected disability, a service-connected condition may be found to be a contributory cause of death only when that condition has had a "material influence in accelerating death" because it "affected a vital organ [such as the lungs] and was of itself of a progressive or debilitating nature". 38 C.F.R. § 3.312(c)(4) (1991).

■ In rejecting Dr. Galvez's opinion that PTB was the cause of the veteran's death, the Board noted that the veteran's PTB had been inactive from 1981 to 1985 and that the doctor's opinion was not substantiated by either radiographic studies or a hospitalization report and thus was "not considered to be of sufficient probative value" to confirm the cause of the veteran's death. *Garcia,* at 4. Pursuant to 38 C.F.R. § 3.374(c) (1991), a private physician's diagnosis of active PTB "will not be

accepted to show the disease was **initially manifested** after discharge from active service unless confirmed by acceptable clinical, X-ray or laboratory studies, or by findings of active tuberculosis based upon acceptable hospital observation or treatment" (emphasis added). Since the veteran's PTB was initially diagnosed in service, R. at 1, there is no requirement that Dr. Galvez's opinion be substantiated by radiographic or hospitalization records. Although the BVA cannot ignore the opinion of a treating physician, the Board is free to discount the credibility of that physician's statement. *Sanden v. Derwinski,* 2 Vet.App. 97, 101 (1992); *see Smith (Brady) v. Derwinski,* 1 Vet.App. 235, 237 (1991) ("Determination of credibility is a function for the BVA.") The Board's findings of fact, including findings regarding credibility, may be overturned by this Court only if those findings are clearly erroneous. *Jones (McArthur) v. Derwinski,* 1 Vet.App. 210, 217 (1991); *Gilbert v. Derwinski,* 1 Vet.App. 49, 52 (1990). If the BVA's account of the evidence is plausible in light of the entire record, this Court may not reverse it. *Jones,* 1 Vet.App. at 217; *Gilbert,* 1 Vet. App. at 52. Here, in light of the inadequacies pointed out below, the Court is not able to adjudicate whether the Board's finding was plausible and thus not clearly erroneous. *See Gilbert,* 1 Vet.App. at 57 ("an administrative decision ... must be clear enough to permit effective judicial review").

▉ In its decision, the BVA stated that "[r]easonable doubt for allowance of the benefit requested on appeal has not been demonstrated". *Garcia,* at 5. According to the benefit-of-the-doubt doctrine, 38 U.S.C. § 5107(b) (formerly § 3007), the appellant needs only demonstrate that there is an "approximate balance of positive and negative evidence in order to prevail". *Gilbert,* 1 Vet.App. at 54. Further, the "reasons or bases" requirement of 38 U.S.C. § 7104(d)(1) (formerly § 4004) applies to the Board's application of the benefit-of-

the-doubt doctrine. *Gilbert,* 1 Vet.App. at 58. Consequently, the "bare conclusion" (*ibid.*) that the benefit-of-the-doubt doctrine does not apply, is inadequate where, as here, there is substantial evidence in the appellant's favor. If, on remand, the Board finds that the evidence that PTB contributed to the veteran's death is in relative equipoise with evidence discounting the contribution of PTB, then the appellant will be entitled to the application of the benefit-of-the-doubt doctrine.

The Court further holds as a matter of law that appellant's claim was well grounded and thus triggered VA's duty to assist the appellant "in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a). As noted above, in his written presentation to the Board, the veteran's representative referred to a "tuberculosis board report by Dr. A.N. DeCastro", which may be the same as the "VA TB Board" report referred to in the RO's April 1968 rating decision. Since neither a report from Dr. DeCastro nor any VA TB Board report appears in the ROA, the Court cannot conclude that the duty to assist was carried out; on remand the BVA will be required to obtain and consider any such reports.

### III. CONCLUSION

Upon consideration of the record, the Secretary's motion for summary affirmance, and the appellant's informal brief, the Court holds that the BVA has failed to state adequately, pursuant to 38 U.S.C. § 7104(d)(1) and the analysis in *Gilbert,* the reasons or bases for not applying the benefit-of-the-doubt doctrine of 38 U.S.C. § 5107(b). The Court expects critical reevaluation to occur on remand, in which the Board will reexamine the evidence of record, seek additional evidence as necessary, including a report from Dr. DeCastro and any TB Board reports, as well as, if deemed necessary, an advisory medical opinion concerning the relationship between the veteran's service-connected pulmonary tuberculosis and his death, *Colvin v. Derwinski,* 1 Vet.App. 171, 175–75 (1991) ("[i]f medical evidence of record is insufficient ... the BVA is always free to supple-

ment the record by seeking an advisory opinion"); *see Sussex v. Derwinski*, 1 Vet. App. 526, 530 (1991); 38 U.S.C. §§ 7109, 5109 (formerly §§ 4009, 3009); *Cousino v. Derwinski*, 1 Vet.App. 536, 540 (1991) (issues raised as to service connection of veteran's death may warrant independent medical opinion), and issue a well-supported decision. *Fletcher v. Derwinski*, 1 Vet. App. 394, 397 (1991). Summary disposition is appropriate under *Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990). Accordingly, the Court vacates the July 6, 1990, BVA decision, and remands the record to the Board for prompt readjudication and disposition in accordance with this decision. The Court retains jurisdiction. The Secretary shall file with the Clerk (as well as serve upon the appellant) a copy of any Board decision on remand. Within 14 days after any such final decision, the appellant shall notify the Clerk whether she desires to seek further review by the Court.

VACATED AND REMANDED.